**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DIANA DULANY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Case No. 16-CV-149-JHP-FHM |
| | ) | |
| MEGAN BRENNAN, in her official | ) | |
| capacity as Postmaster General of the | ) | |
| United States Postal Service, | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is defendant's motion for summary judgement (Dkt. 27).  Defendant seeks summary judgment arguing plaintiff fails to establish a prima facie case of interference with her Family Medical Leave Act ("FMLA") rights, or in the alternative, that plaintiff fails to demonstrate pretext with respect to her retaliation claim.  *Id.*  Plaintiff responded by claiming that defendant interfered with her FMLA rights and retaliated against her. (Dkt. 36 at 17-22). Plaintiff further alleges she was constructively discharged. (Dkt. 36 at 22-26).

**I.**

**Factual Background**

Plaintiff Diana Dulany was employed by the United States Postal Service ("USPS") as a supervisor at the Tulsa Plant and Distribution Center ("Plant") until July 29, 2016 when she voluntarily resigned. (Dkt. 24 at 2, 8).  She worked at the USPS for approximately 19 years. (Dkt. 27-1 at 8). Thomas Mullins was Manager Distribution Operations ("MDO") at the Plant and plaintiff's supervisor. (Dkt. 27-1 at 21-22, 25).  Scott D. Tosch was the Plant Manager, and Mr. Mullins' supervisor. (Dkt. 27-1 at 37).

Plaintiff had two separate FMLA claims. On June 2, 2014, plaintiff submitted a Certification of Health Care Provider for Family Member's Serious Health Condition, Form WH-380-F, in order to obtain FMLA status concerning care for plaintiff's mother. (Dkt. 27-1 at 200-204). Plaintiff was approved FMLA for dependent care in case number ending 0840. (Dkt. 27-1 at 29, 205-206). Designation Notice, dated June 17, 2014, was sent to plaintiff indicating her leave was approved with a "Frequency: 1 time per month, Duration, up to 5 days per episode to care for mother." (Dkt. 27-1 at 207). Plaintiff was certified for FMLA through July 29, 2016, when she voluntarily resigned from the Post Office. (Dkt. 27-1 at 32). Between May 27, 2014 and July 22, 2016, plaintiff requested and obtained FMLA leave under case number ending 0840 approximately 49 times. (Dkt. 27-1 at 34; Dkt. 27-1 at 208-215).

On April 16, 2015, plaintiff submitted a Certification of Health Care Provider for Employee's Serious Health Condition, Form WH-380-E, in order to obtain FMLA for her own medical condition (Dkt. 27-1 at 216-220). Plaintiff was approved FMLA in case number ending 4761. (Dkt. 27-1 at 221-222). On April 27, 2015, a Designation Notice was sent to plaintiff indicating her leave was approved with a "frequency 1-2 times per month duration 2-3 days per episode." (Dkt. 27-1 at 223). Plaintiff was certified for FMLA leave through the time she voluntarily resigned. (Dkt. 27-1 at 43). Between April 9, 2015, and July 27, 2016, plaintiff requested and obtained FMLA leave under case number ending 4761 approximately 47 times. (Dkt. 27-1 at 45, 224-232).

FMLA eligibility at the USPS is determined by the HRSSC in Greensboro, North Carolina. (Dkt. 27-1 at 16, 206). An employee applies for FMLA by sending in a certification form from a health care provider to establish the need for leave. (Dkt. 27-1 at 16, 200-204, 216-220). Once approved, an individual can request FMLA by using an automated telephone system. (Dkt. 27-1 at

2

17-18). An individual calls an 800 telephone number and follows automated prompts, which instructs the individual to enter the duration, type of leave requested, and the case number. (Dkt. 27-1 at 17, 59-60). The individual is then provided a confirmation number. (Dkt. 27-1 at 18-19). Local supervisors have no involvement in the process. (Dkt. 27-1 at 20).  Plaintiff was never denied FMLA when requested. (Dkt. 27-1 at 33, 45, 55). [1]

The defendant's Employee and Labor Manual ("ELM") contains various policies and procedures that employees are required to follow, including ELM 515.42 which states that "Absences that qualify as FMLA leave may be charged as annual leave, sick leave, continuation of pay, or leave without pay, or a combination of these.  Leave is charged consistent with current leave policies and applicable collective bargaining agreements." ELM 515.533 states that "An employee requesting FMLA-covered time off because of his or her own incapacitation must satisfy the documentation requirements for sick leave in 513.31 through 513.38 in order to receive paid leave during the absence."  FMLA only provides for unpaid leave. The determination of whether the absence qualifies as paid leave is a separate issue. (Dkt. 36 at 169).

### October 13, Letter of Warning (LOW)

Beginning in the Fall of 2015, plaintiff began to have minor disciplinary problems at work related to her failure to follow instructions.  Four separate letter of warnings were issued by the defendant and placed in plaintiff's employee file.  The first involved two incidences in September 2015.  On September 24, 2015, MDO Mullins sent plaintiff an email stating "I need you to work Sep. 28. Thanks." (Dkt. 27-1 at 242).  MDO Mullins needed plaintiff to work on her normal day off

---

[1]  At one point during plaintiff's deposition she  claimed that her FMLA request was denied for the dates May 6-10, 2015, but that there was not any harm caused. (Dkt. 27-1 at 55-56). Later, she admitted she may have been mistaken about requesting FMLA for those dates and provided no additional evidence establishing she did, in fact, request FMLA for those specific dates. (Dkt. 27-1 at 60). These are the only dates plaintiff claims she was actually denied requested FMLA, but plaintiff provides no evidence to support such a claim.

(September 28, 2015) due to the operational needs at the Plant. (Dkt. 27-1 at 240).   On September 25, 2015, plaintiff replied "Can't. Sorry."   (Dkt. 27-1 at 242).   Plaintiff did not come into work on September 28, 2015, nor did she request FMLA for that day. (Dkt. 27-1 at 64).   On September 28, 2015, plaintiff was requested to report to work on September 29, 2015, due to the operational needs at the Plant. (Dkt. 27-1 at 240).   September 29, 2015, was plaintiff's scheduled day off. (Dkt. 27-1 at 64).   Plaintiff returned a text indicating she was not going to come to work on September 29, 2015. (Dkt. 27-1 at 240).   Plaintiff did not work on September 29, 2015, nor did she request FMLA for that day. (Dkt. 27-1 at 64).

On or about October 13, 2015, plaintiff received a Letter of Warning (LOW) for failure to follow directions by not reporting to work on either September 28th, or 29th, 2015. (Dkt. 27-1 at 63; 240).   The factual allegations in the LOW were accurate. (Dkt. 27-1 at 63-64).   Plaintiff did not suffer any kind of damages or losses as a result of the LOW. (Dkt. 27-1 at 65-66).

**October 20, 2015 LOW and meeting regarding the October LOWs.**

On or about October 22, 2015, plaintiff received a LOW, dated October 20, 2015, for failure to follow instructions. (Dkt. 27-1 at 69, 243).   The letter contained fifteen separate dates when plaintiff either left work early or reported late. (Dkt. 27-1 at 243).   Plaintiff admitted she did not request FMLA leave for any of the dates included in the LOW. (Dkt. 27-1 at 69).   Plaintiff did not receive any punishment beyond the LOW. (Dkt. 27-1 at 73-74).

At plaintiff's request, she met with Mr. Mullins and Andy Jones, plaintiff's representative from plaintiff's union, the National Association of Postal Supervisors, to discuss the October 13 and October 20th LOWs. (Dkt. 27-1 at 65, 71-72).   As part of the meeting, Mr. Mullins offered to remove one of the LOWs from plaintiff's personnel file. *Id.*   Plaintiff did not accept this offer. (Dkt. 27-1 at 71).

4

**December 2, 2015 LOW.**

On or about December 2, 2015, plaintiff received a Notice of Proposed Letter of Warning in Lieu of a 7 Calendar Day Suspension. (Dkt. 27-1 at 245-247).  The LOW contained two separate specifications, one for failing to work on November 16, 2015, and one for failing to attend an investigative interview. (Dkt. 27-1 at 245-247).  The LOW indicated that plaintiff could appeal or seek mediation, but she chose not to contest the LOW in any way. (Dkt. 27-1 at 78, 245-246).  The LOW had nothing to do with FMLA. (Dkt. 27-1 at 77).  Plaintiff did not receive any punishment beyond the LOW. (Dkt. 27-1 at 77-78).

**December absence.**

On December 3, 2015, plaintiff submitted a PS Form 3971, Request for Notification of Absence, seeking sick leave for the period December 3, 2015 through December 24, 2015. (Dkt. 27-1 at 86-87, 248).  Attached to the Form 3971 was a note from Susan Waters, a licensed professional counselor. (Dkt. 27-1 at 249).  Neither the PS Form 3971, nor the Waters note, requested FMLA.  Plaintiff did not return to work until January 6, 2016.  (Dkt. 27-1 at 88).

On December 11, 2015, defendant sent plaintiff an Absence Inquiry letter concerning her absence. (Dkt. 27-1 at 250-260).  Attached to the letter was WHD Publication 1420, Form WH-380-E, and Form WH-380-F, which are documents to facilitate the filing of an FMLA. *Id*.  In particular, Form WH-380-E is the Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act). (Dkt. 27-1 at 253-256).  The letter indicated, "If your absence falls within the FMLA provisions please submit documentation in accordance with the instructions contained in this notice." (Dkt. 27-1 at 251).  Plaintiff admitted she did not request FMLA for the December 2015 absence, nor seek another FMLA case. (Dkt. 27-1 at 87, 91,

101-102,104). Plaintiff did not provide any additional information to the defendant prior to her return to work. (Dkt. 27-1 at 102).

On or about January 6, 2016, plaintiff returned to work and provided the defendant with a note dated December 23, 2015, from Dr. Bradley McClure. (Dkt. 27-1 at 88, 261).  On January 13, 2016, defendant sent plaintiff a Notice of Proposed Letter of Warning in lieu of a 14 Calendar Day Suspension letter. (Dkt. 27-1 at 264).  The letter charged plaintiff with failing to follow instructions contained in the Absence Inquiry letter. (Dkt. 27-1 at 264).  The letter explained that plaintiff could either request mediation, or appeal the LOW. (Dkt. 27-1 at 266). Plaintiff did not seek to either mediate, appeal, or otherwise contest the LOW. (Dkt. 27-1 at 113-114). Plaintiff did not receive any actual punishment as a result of the LOW. (Dkt. 27-1 at 113).

On January 27, 2016, defendant sent to plaintiff a Letter of Decision for Notice of Proposed Letter of Warning in lieu of 7-day Suspension. (Dkt. 27-1 at 268).  This letter referenced the letter dated January 13, 2016, and indicated that defendant "chose not to contest the underlying facts." *Id*. Plaintiff did not contest the letter of decision. (Dkt. 27-1 at 115).

**Plaintiff submits Resignation/Transfer from the Postal Service, PS Form 2574.**

On July 20, 2016, after filing the instant lawsuit, plaintiff provided defendant a Resignation/Transfer from the Postal Service, PS Form 2574, indicating her effective date of resignation to be July 29, 2016. (Dkt. 27-1 at 272).  Attached to the Form 2574 was a one paragraph note signed by plaintiff stating in part, "The discipline I've received started in late September 2015 and by January 2016, am up to a 14-day suspension." (Dkt. 27-1 at 273).  Prior to sending the letter plaintiff made no formal complaint, grievance, or took any other action concerning her treatment, except for the October 2015 meeting. (Dkt. 27-1 at 162-163, 170).

Plaintiff did not request a transfer or otherwise discuss her allegations of unfair treatment with anyone in management who had proper authority. *Id*.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993).  Fed. R. Civ. P. 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*, 477 U.S. at 322.  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

"When the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." *Id*. at 251-252. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.

*Garratt v. Walker,* 164 F.3d 1249, 1251 (10th Cir. 1998).

To survive summary judgment, a plaintiff "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks omitted). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327.

## III.

Under the FMLA, 29 U.S.C. § 2612(a), eligible employees of certain employers, such as the defendant, may take unpaid medical leave for up to twelve weeks during any twelve-month period for a serious health condition. An employee requesting FMLA has the same obligations as any other employee to comply with all of her employer's employment policies, including leave and absence policies. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011) (an employee who requests FMLA has no greater rights than any other employee); *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 877 (10th Cir. 2004); *Taylor v. Smith's Food & Drug Centers, Inc.*, 127 Fed. Appx. 394, *2 (10th Cir 2005); *Branham v. Delta Airlines*, 2016 WL 1676829, at *7 (Utah Apr. 26, 2016). Therefore, in order to obtain paid leave, plaintiff must follow the defendant's leave and absence policies. (Dkt. 27-1 at 30; ELM 515.42).

The Tenth Circuit has recognized two separate theories of recovery under FMLA, entitlement or interference, and retaliation or discrimination. *Janczak v. Tulsa Winch, Inc.,* 621 Fed. Appx. 528, 531 (10th Cir. 2015); *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Plaintiff alleges four causes of action that are based on the same

factual allegations and appear to be duplicative.  Count One and both counts entitled "Count Three" appear to allege retaliation (with the second Count Three alleging constructive discharge). (Dkt. 24 at 8, 10-12).  Count Two appears to allege interference. (Dkt. 24 at 9-10).

A.

Defendant asserts that plaintiff fails to make a prima facie case of interference and, therefore, summary judgment is warranted. Under 29 U.S.C. § 2615(a)(1) it is unlawful for any employer to interfere with, restrain, deny the exercise of, or the attempt to exercise a person's FMLA rights. *Twigg*, 659 F.3d at 1006.  In order to establish an interference claim, plaintiff must show: (1) that she was entitled to FMLA leave; (2) that some adverse action by the employer interfered with her right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).  Plaintiff has the burden to establish the first two elements, and the defendant has the burden with respect to the third element. *Campbell*, 478 F.3d at 1287.  Defendant concedes that plaintiff was entitled to take intermittent FMLA leave pursuant to her two different FMLA claims.  Specifically, for claim ending 0840 she was entitled to FMLA for dependent care of her mother, and for claim ending 4761 she was entitled to FMLA for her own medical condition. The undisputed facts before the Court fail to support interference with plaintiff's FMLA rights under either claim.

Critically, plaintiff provides no evidence she was ever denied FMLA leave. (Dkt. 27-1 at 55, 58).  The record indicates plaintiff requested leave numerous times and it was granted (Dkt. 27-1 at 208-215, 224-232).  Plaintiff also admits her supervisors never denied her FMLA leave. (Dkt. 27-1 at 55, 58).   Plaintiff could call the automated system and obtain FMLA leave consistent with the documentation she provided. (Dkt. 27-1 at 17-18; ELM 515.51).  In order to

establish the interference element, plaintiff must show she was prevented from taking FMLA leave, or denied reinstatement following leave. *Campbell*, 478 F.3d at 1287.  In the instant case, the evidence reflects that each time plaintiff requested leave it was granted.  This defeats her interference claim.

In response to defendant's motion for summary judgment, plaintiff alleges two instances of interference. (Dkt. 36 at 17-18).  The first was in October 2015, when plaintiff provided a note from Dr. McClure indicating plaintiff's absence from work on October 26, 2016 was due to "intermittent FMLA specified reasons." (Dkt. 27-1 at 262).  Plaintiff does not argue, nor provide any evidence to support her claim she did not receive FMLA protection for October 26th.  In fact, she was credited FMLA leave by the USPS for that date. (Dkt. 27-1 at 237).

Plaintiff contends that Mr. Mullins stated the defendant would not have to "honor" Dr. McClure's request that she should be given two consecutive days off, instead of a 6-day work week during the busy holiday season. (Dkt. 36 at 17; Dkt. 27-1 at 38).  FMLA does not require an employer to provide an employee a schedule of their choice.  FMLA only provides for 12 weeks of unpaid leave.  Plaintiff was free to request FMLA leave for one day each week as needed, while her schedule was 6 days a week.[2]  Moreover,  according to undisputed USPS Absence Analysis records, plaintiff never actually worked 6 consecutive days a week after she provided the note to the USPS. (Dkt. 27-1 at 234-236).  Regardless of Mullins expressed opinion, plaintiff obtained exactly what she sought, albeit not something required by FMLA.  Therefore, there was no interference of plaintiff's FMLA rights with respect to the October 26th note.

The second instance of alleged interference involves plaintiff's month long absence in

---

[2] Further, FMLA specifically states that an employee is not entitled to paid sick or medical leave in any situation in which the employer would not normally provide such paid leave. 29 U.S.C. § 2612(d)(2)(B); *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1130 (10th Cir. 2006). The FMLA does not impact the employee's policies and procedures. The Defendant's policies require an employee to work as required by the employer's operational needs. (Dkt. 37-2 at 4, ELM 665.13, 665.15).

December, 2015.   Plaintiff did not attempt to obtain FMLA for this period of time, by either requesting leave on an existing claim, or seeking a new FMLA claim. (Dkt. 27-1 at 87, 91, 95). Plaintiff specifically did not request FMLA leave for the December period of time. *Id.*   Plaintiff admitted numerous times during her deposition that she never requested FMLA for this period of time. (Dkt. 27-1 at 87, 91, 101-102, 104).   Her existing FMLA claim for herself (claim number ending 4761), which provided for limited, intermittent leave, did not cover a month long absence. Rather, it allowed intermitted leave of 1-2 times per month, 2-3 days per episode; that is 5 or 6 days a month maximum, as plaintiff admitted during her deposition. (Dkt. 27-1 at 44, 89, 223).   The conditions were apparently different (not acute stress response) and her month long absence went well beyond the scope authorized as plaintiff admitted. (Dkt. 27-1 at 42, 44, 89, 103); see also *Blazier v. St. John Med. Ctr., Inc.*, 2006 WL 2599199, at *3 (N.D. Okla. Sept. 8, 2006) (merely calling in sick does not trigger FMLA).

Plaintiff is correct that an employee does not need to specifically use the words "FMLA" to invoke their FMLA rights. *Ney v. City of Hoisington, Kansas*, 264 Fed. Appx. 678, 682 (10th Cir. 2008); 29 CF.R. § 825.302©.   An employee must request FMLA leave or provide sufficient information to her employer to reasonably apprise it of the employee's request to take time off. *Blazier v. St. John Med. Ctr., Inc*., 2006 WL 2599199, *6 (N.D. Okla. 2006).   Once there is sufficient notice, the employer should inquire further to obtain more information about the leave. 29 C.F.R. 825.302©.   The employer has the right to require a doctor's certification confirming that the employee truly has a serious health condition. *Ney*, 264 Fed. Appx. at*3.   Leave taken by an employee who fails to provide the requested certification is not FMLA leave. *Id*.   Furthermore, an employee must follow her employer's usual leave policies and procedures. 29 C.F.R. §825.302(d); *Bones v. Honeywell International, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004).

Assuming plaintiff did put the defendant on notice of a potential new FMLA claim, the defendant responded appropriately.  On December 11, 2015, in response to plaintiff's December leave request, the defendant sent an absence inquiry request and paperwork for plaintiff to fill out to pursue an FMLA claim. (Dkt. 27-1 at 250).  Plaintiff provides no evidence to suggest that this letter was somehow inconsistent with USPS policies and procedures.  Plaintiff filled out these same forms for her prior FMLA claims. (Dkt. 27-1 at 200,216).

This further inquiry was appropriate and consistent with FMLA. *Ney*, 264 Fed. Appx. 678, *3; *Blazier,* 2006 WL 2599199, *6.  The letter stated that, "if your absence falls within the FMLA provisions please submit documentation in accordance with the instructions contained in this notice." (Dkt. 27-1 at 251).  If plaintiff believed that her leave should have been FMLA protected, she could fill out the certification forms and submit them for approval. (Dkt. 27-1 at 94-95).  The letter notified plaintiff that if she failed to comply with "any instruction contained in this notice, the entire absence will be charged to Absent Without Official Leave (AWOL)." (Dkt. 27-1 at 251, Dkt. 37-2 at 1 ELM 513.365).

Plaintiff did not pursue FMLA and chose not to fill out and submit the completed certifications to the defendant. (Dkt. 27-1 at 95,102). The decision to seek FMLA leave rests entirely with the employee. As the Tenth Circuit has noted, "We are unaware of any authority that permits an employee to bypass the FMLA's notice and certification provisions." *Ney*, 264 Fed. Appx. at *682.

In sum, plaintiff fails to establish that defendant interfered with the exercise of her FMLA rights.  Plaintiff identifies no instance where she sought FMLA leave and it was denied, or that defendant otherwise attempted to interfere with the exercise of such rights. Therefore, the defendant is granted summary judgment on plaintiff's interference claim.

**B.**

Defendant next argues summary judgment is appropriate in regard to plaintiff's retaliation claim, asserting that plaintiff fails to establish a prima facie case of retaliation or show pretext. (Dkt. 27 at 20-25). Plaintiff contends the issuance of the LOWs were retaliatory. (Dkt. 36 at 20). Plaintiff provides no specific argument, beyond conclusory statements, demonstrating that defendant's proffered reasons for the challenged actions were pretextual. (Dkt. 36 at 22; Dkt. 37 at 6-7). Plaintiff's claims that defendant retaliated against her for using FMLA are analyzed using the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Janczak*, 621 Fed. Appx. at 534, *Metzler*, 464 F.3d at 1170. Plaintiff bears the initial burden of establishing a prima facie case of retaliation, then the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment decision. *Janczak*, 621 Fed. Appx. at 534. The burden returns to plaintiff to show the stated reason is pretextual. *Id.* To prevail, a plaintiff must establish a retaliatory animus. *Zisumbo v. Ogden Regional Med. Ctr.*, 801 F.3d 1185, 1198 (10th Cir. 2015).

To make out a prima facie case of retaliation plaintiff must show (1) she engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there is a casual connection between the protected activity and the adverse action. *Campbell*, 478 F.3d at 1287; *Metzler*, 464 F.3d at 1171. Defendant concedes that plaintiff engaged in protected activity by obtaining and using FMLA protected leave. (Dkt. 27 at 21).

The Supreme Court has held that an adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White,*

548 U.S. 53, 64 (2006). But, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks, citation omitted). Acts carrying "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, though "a mere inconvenience or an alteration of job responsibilities" will not suffice. *Hillig v. Rumsfeld,* 381 F.3d 1028, 1031-1032 (10th Cir. 2004). The standard is an objective one in order to avoid the uncertainties and unfair discrepancies that can plague an attempt to determine a plaintiff's "unusual subjective feelings." *Burlington N. & Santa Fe Ry. Co.,* 548 U.S. at 68-69.

Plaintiff was not terminated, demoted, suspended, nor did she lose any earned pay or status. Rather, plaintiff alleges she suffered an adverse employment action due to the issuance of the LOWs, and that her absence from December 3, 2015 through January 6, 2016 was treated as leave without pay. (Dkt. 36 at 20). Under the facts and circumstances of this case, the letters did not have any adverse effect on her employment. (Dkt. 27-1 at 62,65-66, 73-74, 77,113).

The categorization of plaintiff's December absence was due to her failure to provide adequate documentation for the leave. (Dkt. 27-1 at 251). Plaintiff was advised her absence would be treated unfavorably, and she failed to contest the issue when given the opportunity. (Dkt. 27-1 at 251, 268). The December 11, 2015 absence inquiry letter stated in bold print, "**If you fail to comply with any instruction contained in this notice, the entire absence will be charged to Absent Without Official Leave (AWOL)**." (Dkt. 27-1 at 251). Plaintiff chose not to present any response to the LOW concerning her failure to comply with the absence inquiry letter. (Dkt. 27-1 at 264, 268).

Assuming plaintiff suffered materially adverse actions, there is no evidence of any causal connection between plaintiff's exercise of her FMLA rights and the actions.  The critical inquiry is whether the plaintiff demonstrated that defendant's actions occurred under circumstances that give rise to an inference of unlawful discrimination. *Metzler*, 464 F.3d at 1171.  Temporal proximity between the adverse action and the protected activity may give rise to an inference of casual connection. *Metzler*, 464 F.3d at 1171.  The Tenth Circuit has emphasized, however, that a plaintiff may rely on temporal proximity alone only if the adverse action is '*very closely* connected in time to the protected activity. *Id.* (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

Plaintiff must establish that "but-for" unlawful retaliation any adverse action would not have occurred. *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013).  It is not enough to show that the protected conduct was merely a motivating factor. *Id* at 2534.  Plaintiff must show a causal connection with evidence of circumstances justifying an inference of a retaliatory motive. *Moore-Stovall v. Shinseki*, 969 F. Supp. 2d 1309, 1330 (D. Kan. 2013).  This element requires a showing of "bad intent" or "retaliatory motive" by the employer. *Campbell*, 478 F.3d at 1287.

In this case there is an absence of retaliatory animus. No evidence suggests anyone in USPS management harbored any animosity toward plaintiff for using FMLA.  In fact, many Plant employees had used FMLA leave. (Dkt. 27-1 at 149).  Nor is there evidence of temporal proximity. Plaintiff first obtained and used FMLA in April 2014. (Dkt. 27-1 at 205-206, 208-215).  The conduct she claims to be materially adverse occurred between October 2015 and January 2016. The length of time between these events suggests they are unrelated.

Plaintiff feels she was treated unfairly by defendant. However, she claims Mr. Mullins treated everyone unfairly all the time. (Dkt. 27-1 at 24, 157-158, 173-174).   Federal anti-discrimination laws are not intended to enforce general civility or pleasant work conditions. *Aman v. Dillon Companies, Inc.*, 645 Fed. Appx. 719, 725 (10th Cir. 2016); *Anderson, 181 F.3d at 1178; Kodl v. Board of Education*, 490 F.3d 558, 563 (7th Cir. 2007) (merely complaining in general terms about harassment without establishing a connection to protected status is insufficient). Plaintiff provides nothing beyond her own subjective beliefs, not facts, in support of an alleged causal connection. She admits that it is just her "opinion" the defendant retaliated against her. (Dkt. 27-1 at 137, 143, 146, 148).   That is insufficient to establish the requisite causal connection. Accordingly, the Court finds plaintiff is unable to establish a prima facie case of retaliation.

Finally, even if plaintiff were able to establish a prima facie case of retaliation, she fails to establish that defendant's proffered non-discriminatory reasons for the LOWs and categorizing the December absence as AWOL was a pretext.   Defendant established that all actions taken by defendant were for legitimate business reasons based on its policies and procedures.   Each LOW identified specific conduct committed by plaintiff; the policy or procedure violated by plaintiff's conduct; and explained how plaintiff could appeal, or seek mediation if she disputed anything in the LOW. (Dkt. 27-1 at 240-241, 243-244, 245-247, 264-267).   She did so only once regarding the October LOWs, yet did not pursue any formal grievance. (Dkt. 27-1 at 64-65, 73).   In that instance, Mr. Mullins attempted to resolve the matter, but plaintiff declined. (Dkt. 24 at 5, Dkt. 27-1 at 65, 71-72).

Plaintiff did not contest the other LOWs, and defendant asserts they were legitimate and based on sound business reasons.   Defendant has a right to require its employees to follow its policies and procedures. *Bones*, 366 F.3d at 878 (uncontroverted that plaintiff did not comply with

16

defendant's absence policy); *Taylor v. Smith's Food & Drug Centers, Inc.,* 127 Fed. Appx. 394, 397 (10th Cir. 2005) (plaintiff properly terminated for not complying with defendant's absence policy). Plaintiff failed to follow USPS policies to properly document her month long absence in December, 2015. (Dkt. 27-1 at 264, 268). Plaintiff failed to contest this determination when given the opportunity by defendant. (Dkt. 27-1 at 268)

A plaintiff may show pretext by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action...." *Zisumbo*, 801 F.3d at 1200 (citations omitted). Mere conjecture concerning pretext, however, is insufficient to defeat summary judgment. *Id.*, *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011). The focus of the analysis is on the decision-makers' motivation. *Zisumbo*, 801 F.3d at1200. Also, mere temporal proximity between the protected activity and the alleged adverse employment action alone is insufficient to establish pretext. *Id.*; *Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1293 (10th Cir. 2013); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir. 2007).

The relevant inquiry is not whether the proffered reasons were wise, fair, or correct, but rather whether the defendant believed those reasons were true and acted in good faith. *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007). "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Id.* Put another way, the question is not whether the employer's stated reason for the arguably adverse action is "ontologically true, but only whether the employer honestly believed that reason to be true." *Moaz v. Safeway, Inc.*, No. 11-CV-1061, 2013 WL 1154467, at *2 (D. Colo. Mar. 19, 2013).

Courts should not second-guess an employer's business judgment or replace the employer's opinion of best practices with either an employee's opinion or the Court's own, even if it seems in

17

hindsight that the action taken constituted poor business judgment. *Mancell v. McHugh*, 2016 WL 285087 at *2 (10th Cir. Jan. 25, 2016). In this case, plaintiff violated various policies and procedures and in most cases did not dispute her violations.

Plaintiff admits she has no evidence except her own subjective opinion to establish that she experienced retaliation. (Dkt. 27-1 at 137, 139, 143, 146, 148). There is nothing in the record to suggest that management was not acting in good faith. In the response to the motion for summary judgment, plaintiff offers no facts, only a single conclusory statement, to support pretext. This is insufficient to defeat summary judgment. There is no evidence that anyone in USPS management did not act in good faith in applying its policies and procedures.

Plaintiff has failed to establish a prima facie case of retaliation, or in the alternative, has failed to demonstrate that defendant's proffered non-discriminatory reasons were pretextual. Defendant is granted summary judgment on plaintiff's retaliation claims.

## C.

Plaintiff did not suffer any damages recoverable under the FMLA. The damages available under the FMLA are limited "to the amount of any wages, salary, employment benefits, or other compensation denied or lost by the employee due to the violation, plus interest; or in a case in which wages, salary, employment benefits have not been denied or lost by the employee, any actual monetary losses sustained by the employee as a direct result of the violation. 29 U.S.C. § 2617(a)(1); *Jordan v. United States Postal Service*, 379 F.3d 1196 (10th Cir. 2004). Liquidated damages equal to the amount of lost wages and compensation are available in the discretion of the court, if the employer did not act in good faith. *Id.* Section 2617 does not provide for compensatory or nominal damages in general, but is instead expressly limited to lost compensation and actual monetary damages. *Walker v. United Parcel Serv., Inc.* 240 F.3d 1268, 1278 (10th Cir.

2001).

Plaintiff did not suffer monetary loss as a result of the alleged FMLA violations.  In fact, the only arguable "loss" involved the December absence, which did not implicate FMLA because plaintiff did not seek FMLA leave. (Dkt. 27-1 at 87, 91, 95).  Otherwise, plaintiff does not identify any actual loss resulting from her use of FMLA.  FMLA is not implicated in any instance where a plaintiff fails to properly follow defendant's leave policies and procedures.

**D.**

Finally, plaintiff fails to establish she was constructively discharged. Constructive discharge occurs when the employer by its illegal discriminatory acts make working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign. *Lara v. Unified School District #*501, 350 Fed. Appx. 280, 283 (10th Cir. 2009); *Turnwall v. Trust Co. of America*, 146 Fed. Appx. 983 (10th Cir. 2005); *Banks v. Armed Forces Bank*, 126 Fed. Appx. 905, *2 (10th Cir. 2005); *Boyce v. Board of County Commissioner of Dickinson County*, 857 F.Supp. 794, 798 (D. Kan. 1994).   The standard is objective, neither the employee's subjective feelings of the situation, nor the employer's subjective intent are relevant. *Id.*

The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions. *Turnwall*, 146 Fed. Appx. at *3.  Plaintiff's burden in a constructive discharge case is substantial, and merely showing that the employer's conduct meets the definition of an adverse employment action is not necessarily sufficient to establish a constructive discharge. A constructive discharge requires a showing that the conditions imposed by the employer are not only tangible or adverse, but intolerable. *Id.*

The 10th Circuit has noted that the constructive discharge 'bar is quite high.' *Lara,* 350 Fed.

Appx. at 283.   The issue is not whether the working conditions were difficult or unpleasant, plaintiff must show she had no other choice but to quit. *Id*; *Yearous v. Niobrara County Memorial Hospital*, 128 F.3d 1351, 1357 (10th Cir. 1997).   A finding of constructive discharge may not be based solely on a discriminatory act; there must also be aggravating factors that make staying on the job intolerable. *Lara*, 350 Fed. Appx. 284.

Construing the facts in the light most favorable to plaintiff, the working conditions she describes fall short of intolerable. Plaintiff contends she felt like she was treated unfairly at work; but, as noted above, her subjective views are irrelevant.   The only conduct she described in her resignation note, occurred in January 2016, a full six months before she resigned.   (Dkt. 27-1 at 273).   Plaintiff was issued several LOWs which resulted in no loss of earned pay, demotion, significant punishment, or other adverse effect. Plaintiff did not describe in the Amended Complaint, or resignation letter, any other discriminatory acts that materially worsened her work conditions from January to July, 2016. (Dkt. 24; Dkt. 27-1 at 273).   In her deposition, plaintiff discusses some episodic instances where she claimed she was harassed. (Dkt. 27-1 at 165-172). Such conduct, even if true, does not create an objectively intolerable workplace, particularly in light of plaintiff's failure to complain about the conditions.   Nor does plaintiff establish any causal connection between the alleged harassment and her use of FMLA leave, beyond speculation.

Plaintiff also claims her reassignment in February 2016 from one supervisory position in an automated area to another supervisory position in a manual area, and changing her schedule, contributed to her alleged forced resignation. (Dkt. 36 at 25-26; Dkt. 27-1 at 146-148; Dkt. 37-1 at 67-70; Dkt. 37-3 at 40-43).   The schedule resulted in her having Saturdays and Sundays off, and coming in later in the afternoon.   Her supervisor, Robin Jacobs, believed that Plaintiff would prefer the change because it gave Plaintiff more time to take care of her mother. (Dkt. 27-1 at 148; Dkt.

37-3 at 42).

Plaintiff admitted she was paid the same and the job was less stressful. (Dkt. 27-1 at 147). A change in job responsibilities for the same pay does not make a job intolerable. Furthermore, there is substantial, unrebutted evidence, supporting the change. (Dkt. 37-1 at 67-70). Plaintiff argues the area she was moved into had not had a supervisor for some period of time. (Dkt. 36 at 25). This may be technically true, but Ms. Jacobs testified she had been fulfilling those supervisory duties, in addition to other duties. (Dkt. 37-3 at 41-42).

Mr. Mullins alleges he made the change for legitimate business reasons, not to harass Plaintiff. (Dkt 37-1 at 68). As Mullins explained, the Plant Manager was "constantly beating" him up that the manual operations department was not getting the mail "out the door" in a timely manner and needed a supervisor. (Dkt. 37-1 at 68). The Plant Manager agreed that plaintiff would be a good fit for the assignment. (Dkt 37-1 at 69). The assignment required a schedule change because it was a Monday through Friday operation that began at 4:00 p.m. (Dkt 37-1 at 69). As with other decisions regarding plaintiff, her use of FMLA had nothing to do with the reassignment. (Dkt 37-1 at 106-107). Plaintiff admitted she had no proof this change was related to her FMLA use. (Dkt. 27-1 at 146, 148). Plaintiff offers no factual evidence undermining Mullins' explanation for the change. Plaintiff's subjective displeasure with the reassignment under the facts and circumstances of this case is irrelevant.

Plaintiff did nothing to address any perceived concerns she had with defendant after the single meeting concerning the October LOWs in October 2015. Multiple options were available to plaintiff, yet she did not pursue them. For example, she could have initiated a grievance, complaint, or mediation; met with supervisors, the plant manager, human resources and/or a union representative; or sought a reasonable accommodation, among other options. (Dkt. 27-1 at 23, 38,

40-41, 73, 115, 120, 162-163, 170).  She could also have sought a transfer to a different Post Office location.  Plaintiff admitted that she did not even discuss leaving with anyone in management prior to simply resigning. (Dkt. 27-1 at 172).  Plaintiff voluntarily chose to leave without ever attempting to address her perceived complaints with the defendant.

In sum, in order to establish she was constructively discharged, plaintiff had to establish her work conditions were objectively intolerable and that she had no other reasonable alternative except to quit. Plaintiff failed to do so, therefore, her constructive discharge claim is dismissed.

Finally, plaintiff had a duty to take reasonable steps to mitigate her damages. *Austin v. Jostens, Inc.*, 2009 WL 902417, *3 (D.Kan. Mar. 31, 2009).  The burden is on the defendant to establish plaintiff did not exercise reasonable diligence. *Minshall v. McGraw Hill Broad. Co., Inc.*, 323 F.3d 1273, 1287 (10th Cir. 2003).  Plaintiff cannot simply refuse to seek other employment and expect her former employer to pay her salary until she reaches retirement. *Franzen v. Ellis Corp.,* 543 F.3d 420, 429-430 (7th Cir. 2008).

Plaintiff admitted during her deposition that she has been unemployed and has not even looked for other employment since voluntarily resigning from the Post Office. (Dkt. 27-1 at 7, 13-14).  She offered no explanation except that she was remodeling her mother's house where she resides. (Dkt. 27-1 at 14).  This failure to mitigate bars recovery of any damages concerning plaintiff's alleged constructive discharge. *Franzen,* 543 F.3d at 430.

## IV.

Accordingly, the Court finds defendant's motion for summary judgment (Dkt. 27) is granted.

**IT IS SO ORDERED this 14th day of March, 2017.**

James H. Payne
United States District Judge
Northern District of Oklahoma